**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
                                :
SCOTT WOLAK,                    :
                                :
        Plaintiff,              :
                                :
        v.                      :
                                :  Civil No. 3:23-cv-734(AWT)
TOWN OF OLD SAYBROOK, JOSHUA    :
ZARBO, and JAMES SIMPSON,       :
                                :
        Defendants.             :
                                :
                                :
------------------------------- x
```

<u>**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**</u>

Plaintiff Scott Wolak brings a fourteen-count Complaint against the Town of Old Saybrook (the "Town") and two officers of the Old Saybrook Police Department (the "Department"), Officer Joshua Zarbo and Patrolman James Simpson. The First Count is a claim pursuant to 42 U.S.C. § 1983 that Zarbo and Simpson arrested the plaintiff without probable cause in violation of the Fourth Amendment. The Second Count is a common law claim against Zarbo and Simpson for false imprisonment. The Third Count is a claim pursuant to 42 U.S.C. § 1983 that Zarbo and Simpson used excessive force against the plaintiff in violation of the Fourth Amendment. The Fourth Count is a claim against Zarbo and Simpson for assault and battery. The Complaint is unclear, but the Fifth and Sixth Counts appear to be claims

-1-

pursuant to 42 U.S.C. § 1983 that Zarbo and/or Simpson failed to intervene to stop an unlawful arrest and failed to intervene to prevent the use of excessive force. The Seventh Count is a claim against Zarbo and Simpson for intentional infliction of emotional distress. The Eighth Count is a claim for negligence against Zarbo and Simpson based on the officers' conduct during the arrest. The Ninth Count is a claim pursuant to 42 U.S.C. § 1983 that Zarbo was deliberately indifferent to the plaintiff's medical needs in violation of the plaintiff's due process rights. The Tenth Count is a claim for negligence against Zarbo based on Zarbo's "fail[ure] to report the mechanism of the injury to [the plaintiff's] treating physicians." Compl. (ECF No. 1) ¶ 49. The Eleventh and Twelfth Counts are claims that the Town is liable for the negligence of Zarbo and Simpson pursuant to Conn. Gen. Stat. § 52-557n. The Thirteenth Count is a claim that the Town is liable for the actions of its employees pursuant to Conn. Gen. Stat. § 7-465. The Fourteenth Count is a claim pursuant to 42 U.S.C. § 1983 against the Town.

For the reasons set forth below, the defendants' motions for summary judgment are being granted in part and denied in part.

## I. FACTUAL BACKGROUND

On November 18, 2022, at approximately 6:06 p.m., the

Department received a call from Pamela Listorti,[1] who reported an erratic driver on Plum Bank Road in Old Saybrook. "Listorti said that the vehicle was traveling all over the road, failing to maintain [its] established lane and was only traveling at 20MPH." Pl. Ex. 5 (ECF No. 61-7) at 3.[2] "Listorti was concerned that the operator of the vehicle was impaired so she contacted [the police]." Id. "The vehicle continued south on Plum Bank Road and turned right at the Maple Avenue intersection." Id. "Listorti then followed the vehicle until it turned onto South Cove Road from Maple Avenue." Id. Listorti reported that the license plate number for the vehicle in question was Connecticut Registration #492ZDH.

Officer Joshua Zarbo and Patrolman James Simpson were dispatched to locate the vehicle in question. "[Zarbo] was first in the area so [he] began driving down South Cove Road from Maple Avenue in search of the vehicle." Pl. Ex. 5 at 3. Zarbo was driving a Department patrol car. "As [Zarbo] drove past 6

---

[1] At times the caller's last name is spelled "Listori". The court uses the spelling in the case/incident report prepared by defendant Zarbo.

[2] Throughout this ruling, the court cites to the page numbers assigned by the court's electronic filing system in the header of any documents or exhibits. The court does not cite to the page numbers, if any, used in the documents or exhibits themselves.

South Cove Road [he] observed a black Cadillac Escalade bearing: CT Reg# 492ZOH parked in the driveway approximately 25 feet off of the road." Id. Listorti had stated that the plate number was 492ZDH, and the plate number for the vehicle Zarbo saw was 492ZOH, so the only difference was that the license plate for the Cadillac Escalade contained an "O" instead of a "D". "Based on the similarity in registration plates and the description from Listorti that the vehicle had turned onto South Cove Road, [Zarbo] believed that this was the vehicle in question." Id. During his deposition, he explained that "O" and "D" are commonly confused. See Zarbo Ex. A (ECF No. 51-4) at p.61 l.24 - p.62 l.2.

The plaintiff asserts that "Plaintiff's vehicle was a 2016 Cadillac Esplanade, a black SUV, which was a completely different make, model, and style than the Chevy Silverado pickup truck that [Listorti] described." Pl.'s L.R. 56(a)(2) Statement of Facts in Opp'n to Summ. J. (ECF No. 61-1) ("PSF") ¶ 6. However, Listorti did not give a description of the vehicle, only a license plate number. A check of NCIC/DMV records by the officers indicated that the license plate number reported by Listorti was associated with a Chevy Silverado pickup.

Zarbo parked his patrol car in the roadway. From the road he could see that the brake lights of the Cadillac Escalade were illuminated and that there was someone sitting in the driver's

-4-

seat. Zarbo approached the vehicle and, as he did so, he could see exhaust coming from the tailpipe and hear the engine running. He turned on his body camera. This was at approximately 6:14 p.m.

Both Zarbo and Simpson had body cameras, and the defendants have submitted both body camera recordings. The body camera recordings are accompanied by transcripts that were produced by a transcription service. The evidence is the body camera recordings, not the transcripts. If the court quotes from the accompanying transcripts, the transcripts appear to capture what is in the body camera recording.

As Zarbo approached the Cadillac Escalade, Zarbo saw the operator, later identified as the plaintiff, texting or otherwise on his cellular phone. Zarbo knocked on the window to get the plaintiff's attention and identified himself as a police officer. Once the plaintiff rolled his window down, Zarbo again identified himself by stating "Hi, Officer Zarbo, Old Saybrook Police."

The body camera recording for this segment of the incident and accompanying transcript contain the following exchanges:

| | |
|---|---|
| OFFICER ZARBO: | Hello, police department. |
| MR. WOLAK: | Yes. |
| OFFICER ZARBO: | Hi, how are you? |
| MR. WOLAK: | Very good. How are you? |

```
OFFICER ZARBO:          Hi, Officer Zarbo, Old Saybrook
                        police[].

MR. WOLAK:              Oh, no worries.
```

Zarbo Ex. B (ECF No. 51-5) at p.4 l.6 - l.14.

Zarbo believed he detected a strong smell of alcohol on the plaintiff's breath and asked the plaintiff how much he had had to drink that night. After the plaintiff responded that he had nothing to drink, Zarbo saw that the plaintiff was holding a wine cork in his hand. In addition, Zarbo concluded that the plaintiff's lips had a purple/red tinge consistent with wine staining, that the plaintiff's eyes were glassy and bloodshot, and that the plaintiff was slurring his speech at times during their conversation.

The plaintiff denies that Zarbo detected a strong smell of alcohol on the plaintiff's breath and denies "that the plaintiff's lips had a purple/red tinge consistent with wine staining, that the plaintiff['s] eyes were glassy and bloodshot, and that, at times, . . . the plaintiff was slurring his speech." PSF ¶ 14. The plaintiff also denies that "[b]ased on [Zarbo's] observations of the plaintiff[,] Officer Zarbo believed that Wolak was and had been operating his vehicle while under the influence of alcohol and/or drugs." Id. ¶ 15. However, the evidence produced by Wolak to support his denial as to what Zarbo believed does not provide any basis to conclude that Zarbo

did not believe what he said he believed, only a basis to
conclude that what he believed was not true.

The body camera recording for this segment of the incident
and accompanying transcript contain the following exchanges:

OFFICER ZARBO:        So you okay?

MR. WOLAK:           Yeah, yeah, yeah. What's wrong?

OFFICER ZARBO:        Nothing. I just had a caller behind you
                      going down Plum Bank. They said you
                      were all over the road and --

MR. WOLAK:           Oh, I don't know.

OFFICER ZARBO:        Yeah?

MR. WOLAK:           Yeah.

OFFICER ZARBO:        Oh, boy, how much we have we had to
                      drink tonight?

MR. WOLAK:           Nothing. Why?

OFFICER ZARBO:        Nothing?

MR. WOLAK:           No, no, no.

OFFICER ZARBO:        What's that smell?

MR. WOLAK:           Excuse me?

OFFICER ZARBO:        What's that smell I could smell? And
                      you're holding a wine cork right now.

MR. WOLAK:           Wait a minute.

OFFICER ZARBO:        Weird.

MR. WOLAK:           I'm on the phone.

OFFICER ZARBO:        Okay.

MR. WOLAK:           Communities I service.

| | |
|---|---|
| OFFICER ZARBO: | Okay. |
| MR. WOLAK: | You from around here? |
| OFFICER ZARBO: | I'm sorry? |
| MR. WOLAK: | Are you from around here? |
| OFFICER ZARBO: | I'm an Old Saybrook Police Officer. |
| MR. WOLAK: | And I'm an Old Saybrook resident. |
| OFFICER ZARBO: | Okay. |
| MR. WOLAK: | Okay. So what do you want from me? |
| OFFICER ZARBO: | Well, that's what I'm asking. How much you had to drink tonight? |
| MR. WOLAK: | I've had nothing. |
| OFFICER ZARBO: | Nothing? You're holding a wine cork right now. |
| MR. WOLAK: | Is that a bad thing? |
| OFFICER ZARBO: | So where'd you get the wine cork from? |
| MR. WOLAK: | I -- look. What's your question for me? |
| OFFICER ZARBO: | How much have you had to drink tonight? |
| MR. WOLAK: | I've had nothing. |

Zarbo Ex. B at p.4 l.15 – p.6 l.8.

Thus, Zarbo asked how much the plaintiff had had to drink that night or referred to the smell of alcohol on four occasions, and he also observed that the plaintiff was holding a wine cork.

Zarbo then asked the plaintiff where the plaintiff was

coming from and learned the plaintiff was coming from Norwalk.
Zarbo asked whether the plaintiff lived at the address where he
had stopped, and the plaintiff, who lived there, responded that
he did not. Zarbo took the statement as having been made
"sarcastically". Pl. Ex. 5 at 5. The plaintiff then opened the
door of his vehicle, at which point Zarbo told the plaintiff
that he had hit him with the car door. But the plaintiff denies
that he hit Zarbo with the car door. Zarbo ordered the plaintiff
to remain in his car. The body camera recording for this segment
of the incident and accompanying transcript contains the
following exchanges:

| | |
|---|---|
| OFFICER ZARBO: | Where are you coming from? |
| MR. WOLAK: | From Norwalk. |
| OFFICER ZARBO: | From Norwalk? |
| MR. WOLAK: | Yeah. |
| OFFICER ZARBO: | Okay. And do you live here? |
| MR. WOLAK: | No. I'm just driving in this house. |
| OFFICER ZARBO: | Okay. |
| MR. WOLAK: | I don't think -- okay. Let's, let's talk. |
| OFFICER ZARBO: | I don't think being disrespectful like that. It's not -- |
| MR. WOLAK: | I said that -- |
| OFFICER ZARBO: | Okay. I didn't say get out of the car. |
| MR. WOLAK: | I can get out of my car. |

| | |
|---|---|
| OFFICER ZARBO: | No, do not do that. |
| MR. WOLAK: | It's my property. |
| OFFICER ZARBO: | Okay. I didn't say get out of the car yet. |
| MR. WOLAK: | I can get out of my car. |
| OFFICER ZARBO: | Okay. So you just hit me with your door. |
| MR. WOLAK: | Why are you standing here? |
| OFFICER ZARBO: | Do not open the car door on me. |
| MR. WOLAK: | Well, let's do this on video. |
| OFFICER ZARBO: | You're being recorded right now. |
| MR. WOLAK: | Well, I'm going to do it, too. |
| OFFICER ZARBO: | That's fine. |

Zarbo Ex. B at p.6 l.13 – p.7 l.15.

Zarbo then told the plaintiff to get out of his vehicle, intending to conduct a field sobriety test. As the plaintiff stepped out of his vehicle, Zarbo twice directed him to walk towards Zarbo's patrol car. Zarbo's and Simpson's body camera recordings for this segment of the incident show that instead of walking toward the officers and Zarbo's patrol car, the plaintiff walked in the opposite direction, towards his home. See also PSF ¶ 23 ("Officer Zarbo then informed the plaintiff that he being detained and was not free to leave, to which the plaintiff again responded 'no, no, no.'"). Zarbo's body camera recording and the accompanying transcript contain the

following exchanges:

| OFFICER ZARBO: | Sure. How about you come out of the car? We're going to walk this way. |
| MR. WOLAK: | No, no, no. |
| OFFICER ZARBO: | Yup, we're going to walk this way. |
| MR. WOLAK: | No, no, no. |
| OFFICER ZARBO: | Sir, so right now you're being detained. You cannot leave. |
| MR. WOLAK: | No, no, no. |
| OFFICER ZARBO: | No, sir, you cannot leave. You're being detained. I'm going to tell you one more time. Okay. You're detained. |

Zarbo Ex. B at p.7 l.20 – p.8 l.6.

Simpson's body camera recording shows that when Simpson arrived at the plaintiff's residence, Zarbo was standing at the driver's side of the plaintiff's vehicle, talking to the plaintiff. As Simpson walked toward Zarbo and the plaintiff, the plaintiff started walking toward his residence, and Zarbo followed him. Simpson's recording shows that the plaintiff was again told to stop and did not. Zarbo's recording shows that as Zarbo took hold of the plaintiff the plaintiff said "Don't touch me" twice, even though these words are not included in the transcript. See Zarbo Ex. K (Zarbo's body camera recording) at 3:16-3:18; PSF ¶ 28.

Simpson's body camera recording shows that by the time Simpson was within a few feet of Zarbo and the plaintiff, the

plaintiff was turned around to face Simpson, and Zarbo was standing behind the plaintiff and holding both of the plaintiff's elbows. The plaintiff's hands were not behind him. Once Simpson was next to Zarbo and the plaintiff, Simpson stated, "hands behind your back." Zarbo Ex. B at p.8 l.10. Zarbo then took control of the plaintiff's left wrist, while Simpson took control of the plaintiff's right wrist. The officers and the plaintiff then moved a few steps. Within several seconds, Zarbo took the plaintiff to the ground. Zarbo described this in his case/incident report as a "controlled take down technique". Pl. Ex. 5 at 6.

Once the plaintiff was on the ground, Zarbo and Simpson secured him in handcuffs, which were checked for fit and double locked to prevent further tightening. The plaintiff began complaining of leg pain and told the officers that his leg was broken. While the plaintiff was still on the ground, Zarbo informed him that he was under arrest. The plaintiff then requested a doctor and, when Zarbo asked the plaintiff if he wanted to go to the hospital, the plaintiff responded, "I might have to." PSF ¶ 36. The body camera recording for this segment of the incident and accompanying transcript contain the following exchanges:

> OFFICER ZARBO:    No, sir, you cannot leave. You're being
>                   detained. I'm going to tell you one
>                   more time. Okay. You're detained. Do

|                  |                                                                        |
| ---------------- | ---------------------------------------------------------------------- |
|                  | not -- stop. Hands behind your back. Stop right now.                   |
| MR. WOLAK:       | Wow, hold on.                                                          |
| OFFICER ZARBO:   | Do not. Stop. Yes, you were fighting. Get your back -- hands behind your back. |
| MR. WOLAK:       | Oh, my God. You broke my --                                            |
| OFFICER ZARBO:   | We have detained. Stop resisting. Keep your hands behind your back.    |
| MR. WOLAK:       | You broke my leg.                                                      |
| OFFICER ZARBO:   | Okay. Sit up. Sit on your bum.                                         |
| MR. WOLAK:       | I can't because you broke my leg.                                      |
| OFFICER ZARBO:   | Who, who broke your leg?                                               |
| MR. WOLAK:       | You did.                                                               |
| OFFICER ZARBO:   | No one broke your leg, sir. Stand on up.                               |
| MR. WOLAK:       | You broke my leg.                                                      |
| OFFICER ZARBO:   | Sit on up.                                                             |
| MR. WOLAK:       | Hold on.                                                               |
| OFFICER ZARBO:   | Where's your leg injured?                                              |
| MR. WOLAK:       | My leg, my right.                                                      |
| OFFICER ZARBO:   | Okay. Can you sit on your butt?                                        |
| MR. WOLAK:       | I can't.                                                               |
| OFFICER ZARBO:   | Okay. Where, where's your -- where do you think your leg's broken?     |
| MR. WOLAK:       | Can you get me a doctor?                                               |
| OFFICER ZARBO:   | Yup, sure. So right now you're under arrest, sir, okay?                |

-13-

Zarbo Ex. B at p.8 l.4 - p.9 l.7.

At this point, Zarbo was in contact with the police dispatcher. Within seconds of the plaintiff indicating that he might need to go to the hospital and within two minutes of the plaintiff first complaining of leg pain or a broken leg, Zarbo requested that the dispatcher send Emergency Medical Services to the scene to treat the plaintiff. Zarbo's body camera recording shows that he asked the plaintiff to give him additional information concerning his injury. Here, the transcript refers to Zarbo as the "EMT", but the EMTs he requested had not yet arrived.

When the Emergency Medical Services personnel arrived, the plaintiff was taken directly to the Middlesex Shoreline Medical Clinic by ambulance. The medical professionals at the hospital took x-rays and, after reviewing them, sent the plaintiff home with a diagnosis of arthritis.

The plaintiff was charged with operating a motor vehicle while under the influence in violation of Conn. Gen. Stat. § 14-227a and interfering with / resisting an officer in violation of Conn. Gen. Stat. § 53a-167a. See Pl. Ex. 5 at 2.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such

-14-

issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. <u>See, e.g.,</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Donahue v. Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Heyman v. Commerce of Indus. Ins. Co.</u>, 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge . . . ." <u>Anderson</u>, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." <u>Gallo</u>, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. See Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 486 (2d Cir. 2014) ("'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" (quoting Celotex, 477 U.S. at 323)). Immaterial factual disputes will not prevent summary

-16-

judgment.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant . . . and draw all reasonable inferences in [the non-movant's] favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990) (alteration in original)). Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (Calabresi, J., dissenting) (internal quotation marks omitted) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

Also, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Weinstock, 224 F.3d at 41. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact,"

-17-

id., if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial," Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (emphasis, quotation marks and citations omitted). "Accordingly, unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

Finally, "the Court may consider only admissible evidence in ruling on summary judgment." Ferraresso v. Town of Granby, 646 F. Supp. 2d 296, 301 (D. Conn. 2009).

## III. DISCUSSION

### A. Section 1983 False Arrest (First Count) and False Imprisonment (Second Count)

The First Count is a claim pursuant to 42 U.S.C. § 1983 against Zarbo and Simpson for false arrest in violation of the Fourth Amendment. The Second Count is a common law claim for false imprisonment against Zarbo and Simpson.

As to the First Count, "[i]n analyzing claims alleging the constitutional tort of false arrest, 'we have generally looked to the law of the state in which the arrest occurred.'" Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007) (citation

-18-

omitted). "And, in Connecticut, a false arrest claim cannot lie when the challenged arrest was supported by probable cause." <u>Id.</u> at 203 (citing <u>Beinhorn v. Saraceno</u>, 23 Conn. App. 487, 491 (1990)). Thus, "[t]o prevail on a Section 1983 false arrest claim, a plaintiff must establish that (1) the defendant intentionally arrested him or had him arrested, (2) the plaintiff was aware of the arrest, (3) there was no consent to the arrest, and (4) the arrest was not supported by probable cause." <u>Weinstock v. Wilk</u>, 296 F. Supp. 2d 241, 246 (D. Conn. 2003) (citation omitted).

As to the Second Count, "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007). Under Connecticut law, "the applicable law for these two causes of action is identical." <u>Outlaw v. City of Meriden</u>, 43 Conn. App. 387, 392 (1996). "False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another[.]" <u>Nodoushani v. S. Connecticut State Univ.</u>, 152 Conn. App. 84, 92 (2014) (citation omitted). "[A] plaintiff's false arrest claim begins accruing at the time of arrest, or at the time the plaintiff was otherwise held pursuant to legal process, and [courts in this District] do not take into consideration the ultimate disposition of the criminal case." <u>Harvey v. Town of Greenwich</u>, No. 3:17-cv-1417 (SRU), 2019 WL 1440385, at *7 (D.

Conn. Mar. 31, 2019) (citing cases). "[T]he law is clear that a cause of action for false imprisonment cannot be sustained where the plaintiff's arrest results from the defendants' institution of and compliance with proper legal authority . . . ." Lo Sacco v. Young, 20 Conn. App. 6, 21 (1989). "To prevail on a claim of false arrest, the plaintiff must establish that the arrest was made without probable cause." Campbell v. Porter, 212 Conn. App. 377, 390 (2022).

Thus, "[t]he existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it[.]" Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002)) (emphasis omitted).

-20-

"The validity of an arrest does not depend upon an ultimate finding of guilt or innocence." Peterson v. County of Nassau, 995 F.Supp. 305, 313 (E.D.N.Y. 1998) (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)). "The fact that an innocent explanation may be consistent with the facts . . . does not negate probable cause." United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985).

"[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Illinois v. Gates, 462 U.S. 213, 235 (1983) (citation and internal quotation marks omitted). "The existence of probable cause must be determined on the basis of the totality of the circumstances, and 'where law enforcement authorities are cooperating in an investigation . . . , the knowledge of one is presumed shared by all.'" Calamia v. City of N.Y., 879 F.2d 1025, 1032 (2d Cir. 1989) (citations omitted). "[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and [] it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute[.]" Weyant, 101 F.3d

-21-

at 852 (citations omitted).

The defendants contend that there was "ample probable cause to arrest [the plaintiff] for interfering with an officer and driving under the influence." Zarbo Mem. in Support of Mot. for Summ. J. (ECF No. 51-1) ("Zarbo Memorandum") at 11. The court agrees because there is no genuine issue of material fact.

It is undisputed that Wolak was arrested for operating a motor vehicle while under the influence of liquor or drugs or while having an elevated blood alcohol content in violation of Conn. Gen. Stat. § 14-227a. That statute provides in relevant part:

> No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content.

Conn. Gen. Stat. § 14-227a.

A concerned citizen reported an erratic driver who was driving all over the road, failing to maintain a proper lane, and only travelling at 20 miles per hour. The citizen had followed the vehicle until it turned onto South Cove Road from Maple Avenue. Zarbo began driving down South Cove Road from Maple Avenue and saw a vehicle that had a license plate number almost identical to the license plate number that had been

reported by the concerned citizen, the only difference being an "O" instead of a "D". When Zarbo approached the plaintiff's vehicle, the engine was running. When he spoke to the plaintiff, he saw that the plaintiff was holding a wine cork, and the plaintiff's answers to Zarbo's questions were at times nonresponsive. Also, Zarbo believed that he smelled alcohol on the plaintiff's breath, that the plaintiff's eyes were glassy and bloodshot, and that, at times, the plaintiff was slurring his speech.

In light of the foregoing, the officers had a combination of reasonably trustworthy information and personal knowledge about facts and circumstances that were sufficient to establish probable cause to arrest the plaintiff for drunk driving.

The plaintiff was also arrested for interfering with / resisting an officer in violation of Conn. Gen. Stat. § 53a-167a. That statute provides in relevant part:

> A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties.

Conn. Gen. Stat. § 53a-167a(a).

There is no genuine issue as to the fact that the plaintiff refused to obey the lawful commands of the officers after he got out of his vehicle. The body camera recordings of both Zarbo and Simpson establish that the plaintiff said "no" when he was told

that he was being detained and could not leave and also walked away from the officers toward his residence. Wolak's explanation after the fact that he intended to go to the bathroom, an explanation which he never shared with the officers at the time, is immaterial.

In light of the foregoing, the officers had a combination of reasonably trustworthy information and personal knowledge about facts and circumstances that were sufficient to establish probable cause to arrest the plaintiff for the offense of obstructing, resisting, or hindering a police officer in the performance of his duties.

Because there is no genuine issue as to the fact that there was probable cause to arrest the plaintiff for drunk driving and interfering with / resisting an officer, the plaintiff cannot prove his claim in either the First Count or the Second Count.

In his opposition, the plaintiff argues that genuine issues of material fact exist with respect to these claims because "the Defendants' warrantless entry onto the curtilage of Wolak's home violated the Fourth Amendment" and a "search of the curtilage that occurs without a warrant based on probable cause or an exception to the warrant requirement violates the Fourth Amendment." Pl. Opposition (ECF No. 61) at 8 (emphasis omitted). However, as the defendants point out, there is no claim for unlawful entry onto the plaintiff's property in the Complaint,

-24-

and the plaintiff cannot assert one now. See <u>Mignault v. Ledyard</u> <u>Pub. Sch.</u>, 792 F. Supp. 2d 289, 301 (D. Conn. 2011) ("It is well established that a party cannot assert a claim for the first time in its motion papers." (citation omitted)).

In any event, the plaintiff has not created a genuine issue as to whether Zarbo and Simpson violated his Fourth Amendment rights by entering his property because "[a] police officer not armed with a warrant may approach a home in hopes of speaking to its occupants, because that is 'no more than any private citizen might do.'" <u>Florida v. Jardines</u>, 569 U.S. 1, 8 (2013) (quoting <u>Kentucky v. King</u>, 563 U.S. 452, 469 (2011)).

The plaintiff also argues that Zarbo did not have reasonable suspicion to detain him because the plaintiff's vehicle "was a completely different color, style make and model from the vehicle that had been reported as driving erratically." Pl. Opposition at 11. However, there is no genuine issue as to the fact that Listorti did not report the make, model, or color of the vehicle she was following. Rather, she reported that "the vehicle she was traveling behind was bearing CT Reg #492ZDH", and the officers who received that report checked NCIC/DMV records and learned that the vehicle associated with the reported license plate number was a Chevy Silverado pickup truck. See Zarbo Ex. A (Zarbo Dep. Transcript) at p.59 l.8 - l.9 ("She did not say it was a Chevy Silverado pickup.").

-25-

Therefore, the defendants' motions for summary judgment are being granted with respect to the First and Second Counts.

## B. Section 1983 Excessive Force (Third Count); Assault and Battery (Fourth Count)

The Third Count is a claim pursuant to 42 U.S.C. § 1983 against each of Zarbo and Simpson for use of excessive force in violation of the Fourth Amendment. The Fourth Count is a common law claim for assault and battery against each of Zarbo and Simpson.

As to the Third Count, "[p]olice officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). The court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he

-26-

is actively resisting arrest or attempting to evade arrest by
flight." Id. at 396.

"The 'reasonableness' of a particular use of force must be
judged from the perspective of a reasonable officer on the
scene, rather than with the 20/20 vision of hindsight." Id. at
396 (citing Terry v. Ohio, 392 U.S. 1, 20–22 (1968)). "The
calculus of reasonableness must embody allowance for the fact
that police officers are often forced to make split-second
judgments -- in circumstances that are tense, uncertain, and
rapidly evolving -- about the amount of force that is necessary
in a particular situation." Id. at 396-97.

"[T]he right to make an arrest carries with it the right to
use some degree of physical coercion as long as the force used
is reasonable based on the perception of the arresting officer
at the time of the arrest." Lawson v. Cnty. of Suffolk, 920
F.Supp.2d 332, 341 (E.D.N.Y. 2013) (citations and internal
quotation marks omitted). See also Graham, 490 U.S. at 396 ("Our
Fourth Amendment jurisprudence has long recognized that the
right to make an arrest or investigatory stop necessarily
carries with it the right to use some degree of physical
coercion or threat thereof to effect it."). "The fact that a
person whom a police officer attempts to arrest resists,
threatens, or assaults the officer no doubt justifies the
officer's use of some degree of force, but it does not give the

-27-

officer license to use force without limit." <u>Sullivan v. Gagnier</u>, 225 F.3d 161, 165-66 (2d Cir. 2000). "The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." <u>Id.</u> at 166.

The plaintiff asserts that "[t]he Defendants had no objective basis to believe Wolak had committed a crime[.]" Pl. Opposition at 14. The plaintiff also asserts that "[a]ny reasonable jury could conclude <u>any</u> use of force at th[e] moment was unreasonable." <u>Id.</u> at 13 (emphasis in original). He avers that after he stepped away from his car, "Zarbo and Simpson had my arms pinned behind my back when Zarbo picked me up and slammed me violently to the ground[.]" Pl. Ex. 1 (ECF No. 61-3) ¶ 18.

For the reasons discussed above with respect to the First and Second Counts, the plaintiff has failed to create a genuine issue as to the fact that the officers had probable cause to believe that he had committed a crime.

The recording from Simpson's body camera establishes that there is no genuine issue as to the fact that Simpson did not use excessive force against the plaintiff. The only time Simpson touched the plaintiff, prior to the take down effectuated by Zarbo, was when he grabbed the plaintiff's right arm in an effort to place handcuffs on him. Then, after the plaintiff was

-28-

on the ground, Simpson touched the plaintiff as he and Zarbo
were trying to place handcuffs on the plaintiff. The plaintiff
does not contend that the actions of either Zarbo or Simpson,
during the time they were placing the plaintiff in handcuffs
while he was on the ground, constituted excessive force.

As to Zarbo, the body camera recording shows that
immediately before Zarbo takes the plaintiff to the ground,
Zarbo has told him he is being detained and cannot leave and
that the plaintiff has said "No", at which time Zarbo again
tells the plaintiff that he cannot leave and then tells him
again that he is detained. It also shows that Simpson, at the
same time, tells the plaintiff to put his hands behind his back.
See Zarbo Ex. B at p.49 l.4 – l.11. The plaintiff avers, "I
began to walk toward my house during which time I was told to
stop; at no time was I fleeing and I attempted to say that I
needed to relieve myself in the bathroom of my own house." Pl.
Ex. 1 ¶ 16. But the body camera recordings and the accompanying
transcripts do not show that the plaintiff made any statement
about going to the bathroom. Rather, they show that Zarbo and
Simpson were attempting to get the plaintiff to comply with
lawful orders and control him. The defendants argue that courts
have held that under similar circumstances that performing a
controlled take down technique does not constitute excessive
force. They cite to the following cases, among others: McKnight

-29-

v. Vasile, No. 11-cv-6328P (MWP), 2017 WL 1176051, at *25
(W.D.N.Y. Mar. 30, 2017) ("In light of McKnight's refusal to
comply with Vasile's orders to put her hands behind her back,
her physical resistance to the officers' efforts to handcuff
her, her attempt to get inside her house, and her calls to
others inside the house, I find that Vasile's conduct in
grabbing her arm and his eventual use of the straight arm bar
were reasonable and did not amount to excessive force.");
Brayshaw v. City of Burlington, No. 5:13-cv-253 (CR), 2015 WL
1523019, at *12 (D. Vt. Apr. 3, 2015) ("It is undisputed that
Officer Bellavance's use of the arm bar takedown occurred only
after he had employed a verbal command and then a minimal level
of force to move Plaintiff away from the crowd. Officer
Bellavance's escalation of force was in direct response to
Plaintiff's non-compliant conduct."); Cardinal v. Allain, No.
CV-05-107 (JJB), 2007 WL 3256447, at *4 (M.D. La. Nov. 5, 2007)
("Deputy Balcuns used a straight arm bar take down tactic to
bring Mr. Cardinal to the ground. Such a tactic was not
excessive force because Mr. Cardinal was jerking way from Deputy
Balcuns to prevent Deputy Balcuns from handcuffing him.").

However, these cases do not stand for the proposition that
a controlled take down technique can never be objectively
unreasonable. Rather, these cases are illustrative of the fact
that, depending on the particular facts and circumstances, a

-30-

court can conclude that there is no genuine issue as to the fact that use of such a technique was not objectively unreasonable. If, in order to prevail on this claim, the plaintiff had to prove, as he avers, that Zarbo picked him up and slammed him to the ground, he could not prove his claim because Simpson's body camera recording shows that Zarbo did not pick up the plaintiff. But even though Zarbo did not pick up the plaintiff, the body camera recordings show that the situation was fluid and rapidly evolving. The determination as to whether Zarbo's actions were objectively unreasonable is not like the determination as to whether Zarbo picked up the plaintiff because one can look at Simpson's body camera recording and see that Zarbo did not pick up the plaintiff. On the other hand, to determine that Zarbo taking the plaintiff to the ground at the point in time when he did so and with the amount of force he used was not objectively unreasonable, the court must assess what each of the three people present did at particular points in time. The court would have to watch the body camera recordings, hear from each of the three people present his explanation of what he was doing and why, and determine whether to credit that explanation. That is a jury function, not the function of a judge. Therefore, the court concludes that genuine issues of material fact exist with respect to the excessive force claim against Zarbo.

Zarbo contends that, in any event, he is entitled to summary judgment on the plaintiff's 42 U.S.C. § 1983 excessive force claim on the basis of qualified immunity. "Qualified immunity, an affirmative defense as to which the defendants have the burden of proof, shields officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known[.]'" Jackler v. Byrne, 658 F.3d 225, 242 (2d Cir. 2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (citation omitted). "A right is 'clearly established' when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. at 242-43 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. at 243 (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)). "To determine whether defendants enjoy qualified immunity, 'we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law.'" Chamberlain Est. of Chamberlain v. City of

-32-

White Plains, 960 F.3d 100, 110 (2d Cir. 2020) (quoting Terebesi v. Torreso, 764 F.3d 217, 231 (2d Cir. 2014)).

"It is well established that 'use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.'" Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003) (quoting Saucier v. Katz, 533 U.S. 194, 201–02 (2001)). Zarbo argues that "[e]ven if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." Zarbo Memorandum at 23 (quoting Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007). He accurately cites to Figueroa v. Mazza, 825 F.3d 89 (2d Cir. 2016) for the proposition that the "inquiry is not whether the officer should have acted as he did. . . . It is instead whether any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that the challenged action was lawful." Figueroa, 825 F.3d at 100 (emphases omitted). He maintains that, here, "the discrete use of force that was necessary to control and detain the plaintiff was permissible by law . . . ." Zarbo Memorandum at 24. "[T]he matter of whether a [defendant's] conduct was objectively reasonable, i.e., whether a reasonable official would reasonably believe his conduct did not violate a clearly

established right, is a mixed question of law and fact." <u>Kerman</u>

<u>v. City of New York</u>, 374 F.3d 93, 109 (2d Cir. 2004) (citations

omitted). In <u>Kerman</u>, the court explained:

> A contention that -- notwithstanding a clear delineation of
> the rights and duties of the respective parties at the time
> of the acts complained of -- it was objectively reasonable
> for the official to believe that his acts did not violate
> those rights "has its principal focus on the particular
> facts of the case." <u>Hurlman v. Rice</u>, 927 F.2d 74, 78-79 (2d
> Cir. 1991); <u>see</u>, <u>e.g.</u>, <u>Oliveira v. Mayer</u>, 23 F.3d [642,
> 649-50 (2d Cir. 1994)]. Although a conclusion that the
> defendant official's conduct was objectively reasonable as
> a matter of law may be appropriate where there is no
> dispute as to the material historical facts, <u>see</u>, <u>e.g.</u>,
> [<u>Lennon v. Miller</u>, 66 F.3d 416, 421 (2d Cir.1995)]; <u>Glass</u>
> <u>v. Mayas</u>, 984 F.2d 55, 58 (2d Cir. 1993); <u>Robison v. Via</u>,
> 821 F.2d 913, 921 (2d Cir. 1987), if there is such a
> dispute, the factual questions must be resolved by the
> factfinder, <u>see</u>, <u>e.g.</u>, <u>Kerman II</u>, 261 F.3d at 241;
> <u>Oliveira</u>, 23 F.3d at 649; [<u>Calamia</u>, 879 F.2d at 1036].
> "Though '[i]mmunity ordinarily should be decided by the
> court,' . . . that is true only in those cases where the
> facts concerning the availability of the defense are
> undisputed; otherwise, jury consideration is normally
> required . . . ." <u>Oliveira</u>, 23 F.3d at 649 (quoting <u>Hunter</u>
> <u>v. Bryant</u>, 502 U.S. 224, 228 (1991)). After receiving "the
> jury['s] . . . decision as to] 'what the facts were that
> the officer faced or perceived,' " the court then may "make
> the ultimate legal determination of whether qualified
> immunity attaches on those facts." [<u>Stephenson</u>, 332 F.3d at
> 81]; <u>see</u>, <u>e.g.</u>, <u>Warren v. Dwyer</u>, 906 F.2d 70, 76 (2d Cir.)
> ("If there are unresolved factual issues which prevent an
> early disposition of the defense, the jury should decide
> these issues on special interrogatories. The ultimate legal
> determination whether . . . a reasonable police officer
> should have known he acted unlawfully" should be made by
> the court "on the facts found" by the jury. (emphasis
> added)), cert. denied, 498 U.S. 967 (1990).

<u>Kerman</u>, 374 F.3d at 109 (cleaned up).

Here, even after putting aside the plaintiff's contention

that Zarbo picked him up before taking him to the ground, there

is a dispute as to the material facts. Thus, this is a case where the court must make the determination as to whether Zarbo's conduct was objectively reasonable based on pertinent facts found by the jury. Therefore, Zarbo is not entitled to summary judgment on the grounds of qualified immunity.

As to the Fourth Count, a "battery is a harmful or offensive contact with the person of another." Conn. Civil Jury Instructions §3.13-2. "An assault is an act that causes another person to be placed in imminent apprehension of a harmful or offensive contact with that person." Id. § 3.13-1. Thus, a plaintiff "must prove that defendants applied force or violence to him and that the application of force or violence was unlawful." Conroy v. Caron, 275 F. Supp. 3d 328, 356 (D. Conn. 2017) (quoting Odom v. Matteo, 772 F. Supp. 2d 377, 395 (D. Conn. 2011)).

"[A] police officer may use such force as the officer reasonably believes necessary." Lagasse v. City of Waterbury, No. 3:09-cv-391(VLB), 2011 WL 2709749, at *9 (D. Conn. 2011) (citing Carey v. Maloney, 480 F. Supp. 2d 548, 560 (D. Conn. 2007)). See also Conn. Gen. Stat. § 53a-22(b)("[A] peace officer . . . is justified in using physical force upon another person when and to the extent that he or she reasonably believes such use to be necessary to: [] [e]ffect an arrest or prevent the escape from custody of a person whom he or she reasonably

-35-

believes to have committed an offense. . . ."); Miller v. Lovett, 879 F.2d 1066, 1072 (2d Cir. 1989) (the State and federal issues "in excessive force cases" are "closely tied").

Consequently, because the court has concluded there is no genuine issue as to the fact that Simpson did not use excessive force against the plaintiff, the court concludes that he is entitled to summary judgment on the plaintiff's common law claim for assault and battery. Because genuine issues of material fact exist as to whether the force used by Zarbo was objectively unreasonable under all the facts and circumstances, the court concludes that genuine issues of material fact also exist as to whether Zarbo only used such force as he reasonably believed was necessary.

Therefore, Simpson's motion for summary judgment is being granted with respect to the Third and Fourth Counts, and Zarbo's motion for summary judgment is being denied with respect to those Counts.

## C. **Failure to Intervene (Fifth and Sixth Counts)**

The Complaint is unclear with respect to these two counts. The Fifth Count names both Zarbo and Simpson in the caption. It is a claim pursuant to 42 U.S.C. § 1983, which may be against each of Zarbo and Simpson, for failure to intervene because "Defendant failed to intervene to prevent and/or stop the unreasonable and unjustifiable arrest of the Plaintiff, despite

the duty to do so." Compl. ¶ 31. The Sixth Count names only Simpson in the caption. It is a claim pursuant to 42 U.S.C. § 1983, which may be against each of Zarbo and Simpson, for failure to intervene because "[e]ach Defendant failed to intervene to prevent and/or stop the unreasonable and unjustifiable arrest of the Plaintiff, despite the duty to do so." Id. ¶ 33. Notwithstanding the fact that paragraph 33 references an unreasonable and unjustifiable arrest, the parties appear to understand this claim to be one for failure to intervene to prevent the use of excessive force. See Town & Simpson Mem. in Support of Mot. for Summ. J. (ECF No. 52-1) ("Town and Simpson Memorandum") at 12; Pl. Opposition at 16.

In his opposition, the plaintiff does not contest Zarbo's motion for summary judgment with respect to either the Fifth Count or the Sixth Count and, therefore, these counts are deemed abandoned with respect to defendant Zarbo. See Jackson v. Fed. Exp., 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

-37-

"An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official[.]" Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Id.

With respect to the Fifth Count, Simpson is entitled to summary judgment because the court has determined that there is no genuine issue as to the fact that the defendants had probable cause to arrest the plaintiff. Consequently, the plaintiff cannot establish that he was unjustifiably arrested.

Simpson is also entitled to summary judgment on the Sixth Count. Simpson's body camera recording establishes that he did not have a realistic opportunity to intervene before Zarbo performed a controlled take down technique on the plaintiff. Simpson reached out and grabbed Wolak's arm, and both the

-38-

officers were attempting to place handcuffs on Wolak, while he was moving. The situation was fluid and rapidly evolving. Approximately five seconds after Simpson arrived at the side of Zarbo and the plaintiff, the plaintiff was on the ground. Considering all of the evidence, a reasonable jury could not possibly conclude that Simpson had a realistic opportunity to intervene before Zarbo performed the take down technique. Compare O'Neill v. Krzeminski, 839 F.2d 9, 11–12 (2d Cir. 1988) ("The three blows were struck in such rapid succession that Conners had no realistic opportunity to attempt to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator.") with Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 507, 513 (S.D.N.Y. 2008), aff'd sub nom. Jean-Laurent v. Wilkerson, 461 F. App'x 18 (2d Cir. 2012) ("[T]he duration of the second strip search was of sufficient duration that officers who were present had the opportunity to intervene.").

　　　　Therefore, the defendants' motions for summary judgment are being granted with respect to the Fifth and Sixth Counts.

### D. **Intentional Infliction of Emotional Distress (Seventh Count)**

　　　　The Seventh Count is a claim for intentional infliction of emotional distress against each of Zarbo and Simpson. Neither

the Seventh Count nor the plaintiff's opposition specify which actions of the defendants are the basis for this claim, but it appears that the plaintiff bases this claim on his contentions with respect to false arrest and the use of excessive force.

To prove a claim for intentional infliction of emotional distress, the plaintiff must prove the following elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury." Bell v. Bd. of Educ. of City of W. Haven, 55 Conn. App. 400, 409-10 (1999) (citations omitted).

The defendants argue that they are entitled to summary judgment on this claim because the plaintiff has not created a genuine issue of material fact as to the second element, i.e., that their conduct was extreme and outrageous, nor as to the fourth element, i.e., that the plaintiff sustained emotional

distress that was severe. The court agrees.

With respect to the second element, "[w]here an intentional infliction of emotional distress claim is based on a plaintiff's arrest, and probable cause exists for that arrest, an intentional infliction of emotional distress claim may not stand: enforcement of the law can hardly be called conduct beyond the acceptable bounds of decent society." Lawrence v. Town of Westport, No. 3:22-cv-1598 (AWT), 2024 WL 3455828, at *11 (D. Conn. July 18, 2024) (quoting Castro v. Narcisse, No. 3:12-CV-01535 (VLB), 2015 WL 2342401, at *16 (D. Conn. May 14, 2015)). Thus, because the court has concluded there was probable cause to arrest the plaintiff, he cannot establish this claim based on a false arrest.

To the extent this claim is based on use of excessive force by Simpson, the plaintiff cannot establish this claim because there is no genuine issue as to the fact that Simpson did not use excessive force against the plaintiff.

As to Zarbo, the court has concluded that genuine issues of material fact exist with respect to the excessive force and assault and battery claims against him. However, the plaintiff has failed to produce evidence that could establish that, to the extent the force used by Zarbo could be deemed objectively unreasonable, the force was so outrageous in character or so extreme as to constitute extreme and outrageous conduct. As

-41-

discussed above, the plaintiff has not created a genuine issue as to the fact that Zarbo did not pick him up and slam him to the ground. Rather, the plaintiff's evidence as to Zarbo is that at a time when the plaintiff was ignoring lawful commands from Zarbo and from Simpson and they were attempting to control the plaintiff, Zarbo took the plaintiff to the ground.

The Department has a policy on the use of force. Under that policy, officers are "authorized to use physical force when the officer reasonably believes it is immediately necessary at the time, to accomplish lawful objectives", including, but not limited to "[e]ffect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense" or "[e]ffect other lawful objectives." Town Ex. H (ECF No. 52-10) at 5. Under the policy, "[a]n officer's use of force response level shall be objectively reasonable, based upon the totality of the circumstances known or perceived by the officer at the time force was used[, including, but] not limited to . . . [l]evel of resistance". Id. Even if a finder of fact were to conclude that the force used by Zarbo was objectively unreasonable or was more than he reasonably believed was necessary, the fact that the plaintiff was refusing to comply with the lawful orders of the officers, that Zarbo and Simpson were both attempting to control the plaintiff, that the situation was fluid and rapidly evolving,

and that Zarbo had to make a judgment call on the spot as to what force to use mean that Zarbo's conduct fell well short of constituting extreme and outrageous conduct. Compare Velez v. McDonald, No. 3:10-CV-483 (JBA), 2011 WL 1215442, at *5 (D. Conn. Mar. 27, 2011) ("Being maced in the face at close range while restrained and compliant, [and] slapped and slammed against the wall and floor, . . . where a plaintiff posed no risk to the corrections officers, may be found to constitute extreme and outrageous conduct."); Mejia v. City of New York, 119 F. Supp. 2d 232, 284-86 (E.D.N.Y. 2000) (concluding plaintiffs "produced evidence of conduct sufficiently extreme and outrageous", including that the officer "conspired to manufacture the evidence on which . . . a conviction would be based", made "disparaging remarks . . . regarding [plaintiffs'] Colombian nationality", threatened one plaintiff that her "children would be taken from her", and ordered the same plaintiff "to be strip searched"); Coggins v. Cnty. of Nassau, 254 F. Supp. 3d 500, 524 (E.D.N.Y. 2017) (concluding the "evidence that [the officers] lied repeatedly in the course of the investigation and prosecution of plaintiff, that [one] grabbed plaintiff roughly during the traffic stop and threatened him physically, and that [the other officer] shouted to 'Just shoot him in the back' as plaintiff fled" constituted "sufficient evidence of outrageous conduct to support his IIED

-43-

claim.").

With respect to the fourth element, "Connecticut courts have held that emotional distress is severe when it reaches a level which no reasonable person could be expected to endure." Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 175-76 (D. Conn. 2003) (internal quotation marks and citations omitted). "The Connecticut Appellate Courts have never adopted a bright-line test for determining what kinds of mental distress are sufficiently serious to sustain a claim of IIED, but the trial courts have consistently used the standard set forth in the Restatement." Stubbs v. Gerken, No. 3:21-CV-1525 (SALM), 2022 WL 4585296, at *17 (D. Conn. Sept. 29, 2022) (cleaned up). "Comment (j) to the Restatement (Second) of Torts, § 46, provides in relevant part: The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Emotional distress is unlikely to be considered severe in the absence of treatment, medical, psychological, or otherwise." Id. at *17 (quoting Maselli v. Reg'l Sch. Dist. No. 10, 198 Conn. App. 643, 667 (2020)) (alteration in original). "Merely alleging extreme emotional distress without supporting factual allegations is legally insufficient to support a claim of intentional infliction of emotional distress. The supporting

-44-

factual allegations must be more than conclusory statements."
Zadrowski v. Town of Plainville, No. 3:09-cv-1367(DJS), 2013 WL
5435491, at *12 (D. Conn. Sept. 30, 2013) (internal quotation
marks and citations omitted).

While emotional distress is unlikely to be considered
severe where medical treatment is not sought, the failure to
seek medical treatment does not preclude a finding of severe
emotional distress. As explained in Powell v. Jones-Soderman:

> [The plaintiff] did not seek medical treatment, and,
> although a failure to seek medical treatment does not
> preclude a finding of severe emotional distress, [Birdsall,
> 249 F. Supp. 2d at 175], he did not testify as to the
> intensity and frequency of his headaches, sleeplessness and
> appetite fluctuation, all of which can be common responses
> to stress. Thus, the Court finds that Powell has not
> carried his burden of proof on the intentional infliction
> of emotional distress claim because he has failed to
> establish the fourth element, requiring him to establish
> that his emotional distress was severe.

433 F. Supp. 3d 353, 378 (D. Conn. 2020), aff'd, 849 F. App'x
274 (2d Cir. 2021).

Here, the plaintiff asserts that "[f]or purposes of summary
judgment, Wolak's emotional distress was severe", citing to
paragraphs 32 to 44 of his affidavit. Pl. Opposition at 22.
In paragraph 32 of his affidavit, Wolak avers that "I was
emotionally affected by this as I had to attend DMV hearings,
and court appearances for driving under the influence, and
suffer prolonged pain to the present day." Pl. Ex. 1 ¶ 32. In
paragraph 42, he avers that "[t]his entire event has had a

significant deleterious effect on every aspect of my life in particular my reputation; my health; and my emotional well-being which I will carry with me on a permanent basis." Id. ¶ 42. There is no evidence that Wolak received medical treatment for emotional distress, and these statements by him do not create a genuine issue as to whether he sustained severe emotional distress.

Therefore, the motions for summary judgment are being granted with respect to the Seventh Count.

**E. § 1983 Deliberate Indifference to Medical Needs (Ninth Count)**

The Ninth Count is a claim pursuant to 42 U.S.C. § 1983 against Zarbo for deliberate indifference to the plaintiff's medical needs in violation of the Due Process Clause of the Fourteenth Amendment. "A pretrial detainee's claims [of deliberate indifference to medical needs] are evaluated under the Due Process Clause", as opposed to the Cruel and Unusual Punishments Clause of the Eighth Amendment, because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner -- neither cruelly and unusually nor otherwise." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (internal quotation marks and citations omitted). To establish this claim, the plaintiff "must meet two requirements: (1) that [the plaintiff] had a serious medical need . . ., and (2) that

-46-

the [defendant] acted with deliberate indifference to such needs." Charles v. Orange Cnty., 925 F.3d 73, 86 (2d Cir. 2019) (citing Estelle v. Gamble, 429 U.S. 97, 105 (1976)). For purposes of his motion for summary judgment only, Zarbo concedes that the plaintiff had a serious medical need. "Deliberate indifference . . . can be established by either a subjective or objective standard. . . ." Id. at 87 (citation omitted). "Thus, a detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." Id. at 87 (emphasis in original).

Here, Zarbo's body camera recording of the exchanges between the plaintiff and Zarbo suggests that Zarbo appeared to not believe the plaintiff's statement that his leg was broken, and these exchanges lasted for approximately 25 seconds. Then, after Zarbo asked the plaintiff to tell him where he thought his leg was broken and the plaintiff asked for a doctor, Zarbo promptly responded affirmatively and asked the plaintiff to give him additional information concerning the plaintiff's injury. Zarbo then asked the plaintiff whether he wanted to go to the hospital, and within seconds of the plaintiff indicating he

-47-

might need to go to the hospital and within two minutes of the plaintiff first complaining of a broken leg, Zarbo requested that the police dispatcher send emergency medical services to the scene to treat the plaintiff.

The plaintiff does not base this claim on the time that elapsed between Zarbo taking him to the ground and Zarbo requesting that emergency medical services be sent to the scene. Rather, he claims that Zarbo "was deliberately indifferent to the Plaintiff's serious medical condition, in that he failed to report the mechanism of the injury to the treating physicians." Compl. ¶ 45. The plaintiff claims that "[a]s a result of the Defendants['s] deliberate indifference, the Plaintiff was delayed in getting proper medical treatment." Id. ¶ 47. He argues in his opposition that he "was transported to a hospital, where Zarbo continued to mislead medical personnel that Wolak was not injured" and that "Zarbo's intentional misreporting of how badly he had injured Wolak directly led to a delay in obtaining proper diagnosis and treatment, which exacerbated his injuries." Pl. Opposition at 19. He argues "[t]he factual issue whether Zarbo recklessly or intentionally misreported the mechanism of Wolak's injury to the EMS and hospital medical personnel precludes summary judgment . . . . ." Id. at 18. He asserts that "[a] jury could easily credit Wolak's testimony and find that Zarbo intentionally failed to report how he injured

-48-

Wolak." Id. at 19. It is undisputed that once medical personnel arrived on the scene "the plaintiff was taken directly to the Middlesex Shoreline Medical Clinic via ambulance." PSF ¶ 38. "The medical professionals at the hospital performed x-rays and, upon reading the same, discharged the plaintiff with a diagnosis of arthritis and sent him home." PSF ¶ 39. It is also undisputed that medical personnel at the facility did not diagnose the plaintiff with a broken acetabulum because they misread the x-ray.

The plaintiff offers no evidence, other than his own testimony, in support of his contention that Zarbo's failure to report to the treating physicians how the plaintiff was injured resulted in a delay in the plaintiff getting medical treatment. While he cites to the report of Dr. Brianna R. Fram, MD, which attributes his injury "to the incident on November 18th[,] 2022, when [the plaintiff] reports he was tackled by police with immediate pain and deformity of his right leg", the report does not mention any statement made by Zarbo at the Middlesex Health Emergency Room. Pl. Ex. 6 (ECF No. 61-8) at 2, 6. The report states that the plaintiff's "clinical course was complicated by missed diagnosis when he initially presented to the emergency room," but does not identify any particular cause for the missed diagnosis. Id. at 6. Nor does the plaintiff's testimony support this contention. During his deposition, the plaintiff was asked,

"At the time that you were in the hospital, did you tell them what happened, your version of events?" Zarbo Ex. D (ECF No. 51-7) (Pl. Dep. Transcript) at p.67 l.4 –l.6. The plaintiff's response was, "I don't recall what I said to them at that moment in time." Id. at p.67 l.7 – l.8. He was then asked:

> Q    But it's your testimony that you believe Zarbo somehow had an effect on the treatment you received at the hospital?
>
> A    I believe a hundred percent he had to have done that, only based on what I heard him say to the ambulance.
>
> Q    Okay. But you didn't [hear him say] anything to the hospital?
>
> A    Look, I was -- I was in so much pain. If you're asking me with a hundred percent certainty, no, I can't tell you with a hundred percent certainty.

Id. at p.67 l.9 – l.20.

Thus, the plaintiff proffers no evidence as to any interaction that Zarbo had with the physicians at the hospital that could have influenced how the physicians treated the plaintiff, nor any evidence as to the reason(s) medical personnel misread the x-ray and did not diagnose the broken acetabulum. He simply believes, without any factual basis for doing so, that Zarbo had an effect on the treatment he received at the hospital.

Thus, assuming arguendo that the plaintiff could bring this claim against Zarbo based on actions taken after the plaintiff was under the care of medical professionals, the plaintiff has

failed to create a genuine issue as to whether Zarbo acted with deliberate indifference to his serious medical needs.

Therefore, defendant Zarbo's motion for summary judgment is being granted with respect to the Ninth Count.

### F. Negligence (Eighth and Tenth Counts)

The Eighth Count is a claim for negligence against Zarbo and Simpson. The plaintiff claims:

> The defendants exhibited a lack of reasonable care, in one or more of the following ways:
>
> a. By failing to reasonably investigate the circumstances before and/or while arresting, apprehending or subduing the plaintiff;
>
> b. In escalating a non-violent incident into one involving a high level of force.
>
> c. By applying unreasonable force to arrest the Plaintiff.

Compl. ¶ 41. The Tenth Count is a claim for negligence against Zarbo only. The plaintiff claims that "Officer Zarbo exhibited a lack of reasonable care in that he failed to report the mechanism of the injury to the treating physicians." Id. ¶ 49.

"In a negligence action, the plaintiff must meet all of the essential elements of the tort in order to prevail. These elements are: duty; breach of that duty; causation; and actual injury." LaFlamme v. Dallessio, 261 Conn. 247, 251 (2002). "Negligence is the violation of a legal duty which one person owes to another." Connecticut Civil Jury Instructions § 3.6-1.

-51-

"Common-law negligence is the failure to use reasonable care under the circumstances. Reasonable care is the care that a reasonably prudent person would use in the same circumstances." Id. § 3.6-3.

Simpson argues that he is entitled to summary judgment on the negligence claim against him because there is no evidence that his "actions lacked such reasonable care as to constitute negligence" and also because "there is no evidence that any of Simpson's actions were the proximate cause of any injury to the plaintiff." Town and Simpson Memorandum at 37-38. In his opposition, the plaintiff does not address his negligence claim against Simpson.

Thus, the plaintiff does not contest Simpson's statements that he and Zarbo "did not know what the plaintiff was possibly doing", that "Wolak could have been a possible danger", and that Simpson and Zarbo "were unaware of his intentions at the time." Town and Simpson's L.R. 56(a)(1) Statement of Facts in Support of Mot. for Summ. J. (ECF No. 52-2) ("Town and Simpson SF") ¶ 19. The plaintiff does not dispute that "there is no constitutional right to an adequate investigation . . . by police officials." Salaman v. City of New Haven, No. 3:19-CV-577 (MPS), 2019 WL 2231223, at *5 (D. Conn. May 23, 2019) (citations omitted). Nor does he respond to Simpson's argument that notwithstanding the fact that there is no constitutional right

-52-

to an adequate police investigation, "it cannot be said that Simpson failed to reasonably investigate the circumstances such that his actions rose to the level of negligence." Town and Simpson Memorandum at 37. The plaintiff does not dispute that "there is no evidence that Simpson's actions in grabbing the plaintiff's wrists to assist in his detention . . . constituted an escalation of the interaction." Id.

Based on the foregoing, Simpson has met his initial burden at the summary judgment stage, and the plaintiff has failed to create a genuine issue of material fact with respect to the negligence claim.

Zarbo argues that the plaintiff does not have a viable negligence claim because "the negligence claims set forth in the complaint are derivative of the substantive false arrest, excessive force, and failure to intervene claims . . . ." Zarbo Memorandum at 28. Because the court has concluded there are genuine issues of material fact with respect to the plaintiff's excessive force and assault and battery claims against Zarbo, this argument fails with respect to the negligence claim against Zarbo, to the extent it is based on those claims.

Both Zarbo and Simpson argue that the plaintiff's common law claims are barred by governmental immunity; the court does not reach this argument with respect to Simpson, because, as discussed above, Simpson is entitled to summary judgment on the

negligence claim against him because the plaintiff has failed to create a genuine issue of material fact as to whether Simpson's actions lacked reasonable care and whether his actions were the proximate cause of injury to the plaintiff.

"[A]s a general rule, [p]olice officers are protected by discretionary act immunity when they perform the typical functions of a police officer." <u>Cole v. City of New Haven</u>, 337 Conn. 326, 339 (2020) (citations and internal quotation marks omitted). Conn. Gen. Stat. § 52-557n(a)(2)(B) "extends . . . the same discretionary act immunity that applies to municipal officials to the municipalities themselves by providing that they will not be liable for damages caused by negligent acts or omissions which require the exercise of judgment . . . ." <u>Id.</u> at 337-38 (citations and internal quotation marks omitted). "There are three exceptions to discretionary act immunity." <u>Violano v. Fernandez</u>, 280 Conn. 310, 319-20 (2006). The three exceptions are as follows:

> First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure . . . . Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . . Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm.

<u>Id.</u> at 319-20 (internal quotation marks and citations omitted). The plaintiff claims that the identifiable person-imminent harm

exception is applicable here. "This identifiable person-imminent harm exception has three requirements: '(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm.'" Edgerton v. Clinton, 311 Conn. 217, 230-31 (2014) (quoting Doe v. Petersen, 279 Conn. 607, 620 (2006)).

Zarbo contends that the plaintiff has not produced evidence that could show that any of these three requirements is satisfied. The plaintiff argues, however, that "[c]ourts in this district routinely apply the imminent harm exception in the context of a case in which excessive force is alleged", and that viewing the evidence in the light most favorable to the plaintiff, the identifiable person-imminent harm exception applies. Pl. Opposition at 21.

The court recently certified to the Connecticut Supreme Court two questions with respect to the scope of the imminent harm-identifiable person exception to discretionary act immunity. See Quezada v. Hamel, No. 3:22-cv-77 (AWT), 2024 WL 5146521, at *5 (D. Conn. Dec. 17, 2024). The ruling of the Connecticut Supreme Court could be dispositive of the arguments the parties are making, and at this stage of the litigation it is appropriate to defer ruling on whether, and to what extent, the identifiable person-imminent harm exception applies in this case.

Therefore, Simpson's motion for summary judgment is being granted with respect to the Eighth Count, and Zarbo's motion for summary judgment is being denied without prejudice with respect to the Eighth and Tenth Counts.

### G. Conn. Gen. Stat. § 52-557n (Eleventh and Twelfth Counts)

The Eleventh Count is a claim against the Town pursuant to Conn. Gen. Stat. § 52-557n for indemnification based on the negligence claim in the Eighth Count. The Twelfth Count is an additional claim against the Town pursuant to Conn. Gen. Stat. § 52-557n for indemnification based on "negligent acts of Defendant Officers". Compl. ¶ 56. Because the court has denied without prejudice defendant Zarbo's motion for summary judgment with respect to the negligence claims, the Town's motion for summary judgment is also being denied without prejudice with respect to the Eleventh and Twelfth Counts.

### H. Conn. Gen. Stat. § 7-465 (Thirteenth Count)

The Thirteenth Count is a claim against the Town pursuant to Conn. Gen. Stat. § 7-465. The plaintiff claims that the Town "is legally liable to pay on behalf of the [defendant police officers] all sums which [they are] obligated to pay by reason of the aforesaid causes of action imposed upon such employees by law for damages awarded for the violation of common law rights and infringement of the civil rights and physical damages to the person and/or property of Plaintiff as a result of the events

complained of herein." Compl. ¶ 57.

"Under § 7-465, the municipality's duty to indemnify attaches only when the employee is found to be liable and the employee's actions do not fall within the exception for wilful and wanton acts." Myers v. City of Hartford, 84 Conn. App. 395, 401 (2004). The Town argues that "to the extent that all claims against the individual officers fail, . . . so too does the indemnification claim." Town and Simpson Memorandum at 38.

Because claims against defendant Zarbo have survived summary judgment, the Town's motion for summary judgment is being denied with respect to this Count.

## I. Section 1983 Claim Against the Town (Fourteenth Count)

The Fourteenth Count is a Monell claim against the Town pursuant to 42 U.S.C. § 1983. The plaintiff claims that the "Town failed to adequately train and supervise the Defendant Officers in the seizure of its citizens." Compl. ¶ 58.

"In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978)).

"[M]unicipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality)).

Thus, "a municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004). "City of Canton requires that plaintiffs establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Id. at 129 (quoting City of Canton, 489 U.S. at 391). "[T]he Supreme Court emphasized in City of Canton that plaintiffs must establish that 'the officer's shortcomings . . . resulted from . . . a faulty training program' rather than from the negligent administration of a sound program or other unrelated circumstances." Id. at 129-30 (quoting City of Canton, 489 U.S. at 390-91). "The

-58-

elements of an identified training deficiency and a close causal relationship, which together require the plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into <u>respondeat</u> <u>superior</u> liability." <u>Id.</u> at 130.

Evidence produced by the Town with respect to training of Department police officers includes the following:

14. Each Old Saybrook police officer is required to successfully complete a municipal police officer training academy program in accordance with the State of Connecticut Police Officer Standards and Training Council ("POST") or a state-accepted equivalent to the municipal training academy.

15. Each officer is further required to complete state-mandated re-certification training every three years to continue as a municipal police officer. This training consists of all aspects of law enforcement, including but not limited to, training in constitutional requirements, laws of arrest and search and seizure, crime scene investigation, report writing, and interviewing techniques, among other subject areas.

16. Additionally, Old Saybrook police officers receive training on Old Saybrook Police Department policies and procedures, including use of force.

17. Joshua Zarbo and James Simpson were duly sworn police officers with the Town of Old Saybrook as of November 2022, and had successfully completed the municipal police officer training academy program or a state-accepted equivalent.

18. Old Saybrook police officers are required to complete at least forty hours of training in job related subjects every three (3) years in order to maintain their re-certification as police officers.

-59-

19. As of November, 2022, Joshua Zarbo and James Simpson
were in full compliance with the re-certification
requirements in place at that time.

Town Ex. F (ECF No. 52-8) (Chief Michael A. Spera Aff.) ¶¶ 14-19. The plaintiff does not dispute this evidence, which is set forth in paragraphs 64 to 68 of the Town's 56(a)(1) statement. Nor does the plaintiff address his failure to train claim in his opposition, and nowhere in the record does the plaintiff identify a specific deficiency in the Town's training program, much less any evidence as to such a deficiency.

Based on the foregoing, the Town has met its initial burden at the summary judgment stage, and the plaintiff has failed to create a genuine issue of material fact with respect to the failure to train claim. Thus, the Town is entitled to summary judgment on the failure to train claim.

To prove a failure to supervise claim, a plaintiff must "(1) establish [the] defendants' duty to act by proving they should have known their inadequate supervision was so likely to result in the alleged deprivations so as constitute deliberate indifference under [Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992)]; (2) identify obvious and severe deficiencies in the . . . defendants' supervision that reflect a purposeful rather than negligent course of action; and (3) show a causal relationship between the failure to supervise and the alleged deprivations to plaintiffs." Reynolds v. Giuliani, 506 F.3d 183,

-60-

193 (2d Cir. 2007). "In this context, plaintiffs must establish
. . . deliberate indifference [by a policymaking official] by
showing that 'the need for more or better supervision to protect
against constitutional violations was obvious,' but that [the
policymaking official] made 'no meaningful attempt' to forestall
or prevent the unconstitutional conduct." Amnesty Am., 361 F.3d
at 127 (quoting Vann v. City of New York, 72 F.3d 1040, 1049 (2d
Cir. 1995)). "Thus, [a plaintiff's] evidence must establish only
that a policymaking official had notice of a potentially serious
problem of unconstitutional conduct, such that the need for
corrective action or supervision was 'obvious,' and the
policymaker's failure to investigate or rectify the situation
evidences deliberate indifference, rather than mere negligence
or bureaucratic inaction." Id. at 128 (quoting Vann, 72 F.3d at
1049).

In support of its motion for summary judgment the Town
submitted the affidavit of Michael A. Spera, who has been the
chief of police for the Department since 2009. Spera avers that
"[a]t no time in November 2022, nor at any time since I have
been Chief of the Old Saybrook Police Department, has the Old
Saybrook Police Department condoned any conduct by its officers
resulting in the deprivation of an individual's civil or
constitutional rights." Town Ex. F ¶ 5. Spera also avers that at
no time during his tenure as Chief has the Department "had any

custom, policy, or practice of biased, and/or inadequate investigations with or investigations conducted in a way to predetermine an outcome of not sustained or exonerated disposition" or a "practice of failing to identify, neglecting or ignoring patterns of possible misbehavior by its police officers." Id. ¶¶ 7, 9. Spera avers further that at no time since he began serving as Chief "has the Old Saybrook Police Department condoned any conduct by its officers resulting in the deprivation of an individual's civil or constitutional rights." Id. ¶ 5.

In his opposition, the plaintiff asserts that "[t]he Town has a history of inadequate supervision over its police Department." Pl. Opposition at 23. "During a four-year period preceding this incident, there [were] reported incidents of Old Saybrook Police officers escalating minor or non-existent offenses into uses of force that resulted in hospitalizations of the victims." Id. The only evidence the plaintiff proffers in support of his assertions with respect to such incidents is three newspaper articles, two from the New Haven Register and one from the Middletown Press. "[N]ewspaper articles offered for the truth of the matters asserted therein are inadmissible hearsay that may not be considered by the Court in deciding a motion for summary judgment." Odom, 772 F. Supp. 2d at 404. See also Allen v. City of New York, 480 F.Supp.2d 689, 720 (S.D.N.Y.

-62-

2007) ("The Court, however, cannot consider [these newspaper] article[s] in assessing [the plaintiff's] opposition to summary judgment. Such evidence constitutes inadmissible hearsay, which is 'unusable to defeat summary judgment.'" (quoting Gonzalez v. City of New York, 354 F.Supp.2d 327, 347 n.29 (S.D.N.Y. 2005))).

The plaintiff does not contest evidence that neither Zarbo nor Simpson had ever had any prior citizen complaints or internal affairs investigations related to use of excessive force and that Simpson's interaction with the plaintiff was the first time he had to use force as an officer. See Town and Simpson SF ¶¶ 3, 9, 11. In addition, he does not dispute that Zarbo never had a use of force incident that resulted in a broken bone. See id. ¶ 2.

Based on the foregoing, the Town has met its initial burden at the summary judgment stage and the plaintiff has failed to create a genuine issue of material fact as to whether the Town had notice of a potentially serious problem of unconstitutional conduct, much less that the Town failed to investigate or rectify any such situation. Thus, the Town is entitled to summary judgment on the failure to supervise claim.

Therefore, the Town's motion for summary judgment is being granted with respect to the Fourteenth Count.

IV. **CONCLUSION**

For the reasons set forth above, the defendants' motions

for summary judgment are being granted in part and denied in part, as set forth below.

As to defendant Zarbo, Defendant's Motion for Summary Judgment (ECF No. 51) is hereby GRANTED with respect to the First, Second, Fifth, Sixth, Seventh, and Ninth Counts; hereby DENIED without prejudice with respect to Eighth and Tenth Counts; and hereby DENIED with respect to the Third and Fourth Counts.

As to defendant Simpson, the Motion for Summary Judgment (ECF No. 52) is hereby GRANTED with respect to the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Counts.

As to defendant Town of Old Saybrook, the Motion for Summary Judgment (ECF No. 52) is hereby GRANTED with respect to the Fourteenth Count; hereby DENIED without prejudice with respect to the Eleventh and Twelfth Counts; and hereby DENIED with respect to the Thirteenth Count.

Patrolman James Simpson is no longer a defendant in this case, as summary judgment has been granted in his favor with respect to all the claims against him.

The remaining claims in this case are the claims in the Third, Fourth, Eighth, and Tenth Counts against defendant Zarbo and the claims in the Eleventh, Twelfth, and Thirteenth Counts against defendant Town of Old Saybrook.

It is so ordered.

-64-

Dated this 28th day of August 2025, at Hartford,

Connecticut.

                                   /s/ AWT
                           _____
                             Alvin W. Thompson
                        United States District Judge